J-S26042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: G.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: P.F., FATHER | : | |
| | : | No. 1161 MDA 2016 |

Appeal from the Decree June 15, 2016
In the Court of Common Pleas of Cumberland County
Civil Division at No(s):  053-ADOPT-2016

| | | |
|---|---|---|
| IN RE: ADOPTION OF: G.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  P.F., FATHER | : | |
| | : | No. 1162 MDA 2016 |

Appeal from the Decree June 15, 2016
In the Court of Common Pleas of Cumberland County
Juvenile Division at No(s):  21-DP-112-2014

BEFORE:   BOWES, DUBOW, and FITZGERALD[*]

MEMORANDUM BY FITZGERALD, J.:                **FILED MAY 12, 2017**

P.F. ("Father") appeals from the decree dated June 15, 2016, and entered on June 16, 2016, terminating his parental rights to his male child, G.F., (born in of June 2014) pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), and (b), and the order dated June 15, 2016, and entered

---

[*] Former Justice specially assigned to the Superior Court.

June 20, 2016, changing Child's permanency goal to adoption under the Juvenile Act, 42 Pa.C.S. § 6351.[1]  We affirm.

In its opinion entered on August 23, 2016, the trial court set forth the factual background and procedural history of this appeal, which we incorporate as this Court's own.  ***See*** Trial Ct. Op., 8/23/16, at 1-7. Importantly, on May 12, 2016, the Cumberland County Children and Youth Services ("CYS" or "the Agency") filed a petition to change Child's permanency goal to adoption, and, on May 19, 2016, CYS filed a petition to involuntarily terminate Father's parental rights with regard to Child.

On June 15, 2016, the trial court held an evidentiary hearing on the termination/goal change petitions.  At the hearing, CYS presented the testimony of Amanda Sigrist, its caseworker assigned to the family.  N.T., 6/15/16, at 12.  CYS next presented the testimony of E.B., Child's maternal aunt and formal kinship caregiver who wishes to adopt Child.  ***Id.*** at 13-14. Father then testified on his own behalf.  Finally, the guardian *ad litem* ("GAL") presented the testimony of M.A., Mother's older sister.  ***Id.*** at 65.

The trial court summarized Ms. Sigrist's testimony as follows.

> Ms. Sigrist testified that[,] while [Father] has taken positive steps during his incarceration, the Agency views [Father's] history of criminal convictions and incarcerations as demonstrative that, while [Father] has recently shown an ability to maintain stable behaviors in the controlled

---

[1] Child's mother, L.A, ("Mother"), died in May of 2015.  N.T., 6/15/16, at 14, 65.

- 2 -

prison environment, he has not shown the same ability in a non-controlled setting (outside of prison). Ms. Sigrist noted the October 2014 assault on [Mother] as specifically representative of this concern.[55]

---

[55 N.T., 6/15/16, at 28.] Ms. Sigrist also testified to an awareness that the relationship between [Father] and [Mother] was violent and tumultuous throughout its existence. *Id.* at 31.

---

As to [Father's] potential to serve as a caretaker, Ms. Sigrist testified that [Father] has never had individual caretaking responsibility for [Child], nor has [Child] ever resided with [Father]. Furthermore, Ms. Sigrist testified that [Child] does not share a significant bond with [Father], because [Father] has been incarcerated for a large portion of [Child's] life. Ms. Sigrist acknowledged that [Father] has not had the same opportunity to bond with [Child], but stated the Agency's view that [Father's] incarceration was the result of his own actions. Ms. Sigrist affirmed it was uncertain if [Father] would be granted parole, and[,] according to his Department of Corrections counselor, if he was granted parole, the date of his actual release was unknown; according to the counselor, his release could come in two weeks or two months. Ms. Sigrist emphasized the Agency's two primary concerns: 1) that [Child] and [Father] do not have a significant bond and 2) that the timeline regarding [Father's] ability to care for [Child] is very uncertain.

It is the Agency's position that termination of [Father's] rights to allow for [Child's] adoption by [E.B.] would be in the best interest of [Child]. Ms. Sigrist testified that [Child] and his sister are in need of a stable, nurturing consistent environment. Ms. Sigrist noted that[,] while [Father] has never had individual parenting responsibility for [Child], [E.B.] has been providing appropriate and loving parenting for [Child] for more than half his life, since May 2015.[63]

---

[63] *See [i]d.* at 24; [E.B.] officially became the informal kinship caregiver in June 2015, but the record shows that [Child] resided with [E.B.] and her mother, [Ms. M.], beginning after [Mother's] death [in May of 2015].

Ms. Sigrist reported [Child] and his sister are very safe and "appear to be very comfortable and loved in their home." [E.B.'s] household includes [Child], his half-sister, A.B., E.B.'s mother (Child's maternal grandmother) and [E.B.'s] biological daughter (Child's cousin), who is 12 years old. [E.B.] testified that all the children get along and after some initial adjustment issues are all doing very well together. The guardian *ad litem*, Marylou Matas, Esq., who observed the children in [E.B.'s] home, reported that [Child] is particularly bonded with [E.B.].

Trial Ct. Op. at 7-8 (most footnotes omitted).

On June 16, 2016, the trial court entered the decree terminating Father's parental rights under Section 2511(a)(1), (2), and (b) of the Adoption Act. On June 20, 2016, the trial court entered the order dated June 15, 2016, changing Child's permanency goal to adoption.

On July 15, 2016, Father timely filed notices of appeal, along with concise statements of errors complained of on appeal, pursuant to Pa.R.A.P.(a)(2)(i) and (b). This Court, *sua sponte*, consolidated the appeals, on August 30, 2016.

On appeal, Father raises four issues, which we have reordered as follows:

[Whether the trial court] erred as a matter of law and abused its discretion in changing the goal to adoption and terminating [Father's] parental rights because a parent's absence or failure to support his or her child due to

- 4 -

incarceration is not, in itself, conclusively determinative of the issue of parental abandonment[?] Incarceration alone is not an explicit basis upon which an involuntary termination may be ordered pursuant to § 2511 of the Pennsylvania Adoption Code, 23 Pa.C.S. § 2511. Courts must inquire whether the parent has utilized those resources at [Father's] command while in prison to continue and pursue a close relationship with the child or children. [Father] did desire to retain parental rights and exerted himself to take and maintain a place of importance in the child's life.

[Whether the trial court] erred as a matter of law and abused its discretion in terminating [Father's] parental rights in that the conditions which led to the removal or placement of the child no longer existed or were substantially eliminated[?]

[Whether the trial court] was in error in determining the best interest of the child would be served by terminating [Father's] parental rights[?]

[Whether the trial court] erred as a matter of law and abused its discretion in changing the goal for this child to adoption and terminating [Father's] parental rights in that [Father] is able to provide the child with the essential parental care, control, and subsistence in the very near future[?]

Appellant's Brief at 4.[2]

_____

[2] Father stated his issues somewhat differently in his concise statement concerning trial court error or abuse of discretion, particularly with regard to changing Child's permanency goal to adoption. *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal). We, nevertheless, find that his concise statement preserved his challenge to the goal change for our review.

Moreover, Father's brief presents a single argument in support of all four questions. *See* Pa.R.A.P. 2119(a) ("[t]he argument shall be divided

We review an appeal from the termination of parental rights with the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, [] 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the

---

into as many parts as there are questions to be argued"). The failure to comply with Rule 2119(a) does not impede meaningful appellate review.

Lastly, although Father's consolidated argument purports to challenge the termination of his parental rights under subsections (a)(5) and (8), the decree did not provide that Father's parental rights were terminated under either of those subsections. *See* Trial Ct. Op. at 14.

trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained:

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id.*** (*quoting **In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, the trial court terminated Father's parental rights under Section 2511(a)(1), (2), and (b). Father challenges the sufficiency of the evidence under those subsections of Section 2511, which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of

relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1)-(2), (b).

Father argues that the trial court erred and abused its discretion in finding that CYS presented sufficient evidence to support the termination of his parental rights under Section 2511(a)(1), (2), and (b). ***See*** Father's Brief, at 6-9. Father asserts that he has used all available resources to preserve his parental relationship while he has been incarcerated. ***Id.*** at 6-7, 13-14.

We have explained this Court's review of a challenge to the sufficiency of the evidence supporting the involuntary termination of a parent's rights pursuant to Section 2511(a)(1) as follows:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.
>
> * * *
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citations omitted).

Further, we have stated:

> [T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

*In re Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010) (citation omitted); *see also In re Adoption of C.L.G.*, 956 A.2d 999, 1006 (Pa. Super 2008) (*en banc*).

Moreover, regarding the definition of "parental duties," this Court has stated as follows:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

In *In re Adoption of S.P.*, our Supreme Court discussed *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975), and stated:

- 10 -

Applying in ***McCray*** the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." ***Id.*** at 655. We observed that the father's incarceration made his performance of this duty "more difficult." ***Id.***

***In re Adoption of S.P.***, 47 A.3d at 828. The Supreme Court continued:

[A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

[***McCray***] at 655 (footnotes and internal quotation marks omitted). . . .

***Id.***

Here, the trial court stated:

This [c]ourt notes [Father's] first three errors complained of on appeal essentially argue the Agency has failed to meet the statutory grounds for termination under 23 Pa.C.S. § 2511(a). The fulfillment of any one subsection of Section 2511(a) provides a threshold sufficient for the court to proceed to evaluate the best interest of the child under 23 Pa.C.S. § 2511(b). ***In re B.L.W.***, 843 A.2d 380 (Pa. Super. 2004) (*en banc*). The Agency's Petition alleges the statutory grounds for termination have been met under 23 Pa.C.S. § 2511(a)(1) and (a)(2). Noting the substantive overlap in [Father's] first three arguments, this [c]ourt addresses them in turn.

[Father's] first argument is that this [c]ourt improperly found a basis for termination of [his] parental rights on the

- 11 -

basis of his incarceration alone. First, [Father's] argument is conclusory. Neither the transcript of the relevant hearing or [sic] the Final Decree granting the termination contain any such statement by the [c]ourt. This [c]ourt is well aware of its responsibility to consider the totality of the circumstances and particular facts of each case:

It is well-established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re R.I.S.*, 36 A.3d 567, 572, (Pa. 2011) (internal citations omitted).

Furthermore, the record shows this [c]ourt considered [a] substantial body of evidence. The record shows the [c]ourt heard from a number of witnesses and accepted a variety of exhibits regarding a number of issues, including but not limited to: the history of the child and [Father's] lack of interactions with the Agency; the child's current health and status in his foster home; [Father's] past and current bond with the child; the impact of [Father's] incarceration on his Family Service Plan goals; [Father's] communication and visitation with the child during [his] current incarceration; and [Father's] future plans. In light of these facts and in the absence of any indication to the contrary, [Father's] argument that the [c]ourt's decision was based on the fact of his incarceration alone does not stand.

Secondly, [Father] seems to argue that based on the fact that he has attempted to remain a part of his child's life alone is sufficient to prohibit the termination of his rights. It is true that "incarceration alone is not an explicit basis upon which an involuntary termination may be ordered pursuant to Section 2511 of the Pennsylvania Adoption Code." *In re R.I.S.*, 36 A.3d 567, 572-573 (Pa. 2011). When a parent is incarcerated, it is incumbent upon him or her to utilize all resources available to maintain a relationship with the child and maintain a place of importance in the child's life. *Id.* The courts have said

- 12 -

it is a "definitive principle that when a parent uses the opportunities that are available in prison to make sincere efforts to maintain a place of importance in the lives of his or her children, incarceration alone will not serve as grounds for the involuntary termination of his or her parental rights.["] **Id.** at 574.

The record does show that [Father] has utilized the resources available to him to maintain a relationship with the child and maintain a role in his life. resents a single argument in support of all four questions.[72] However, this [c]ourt stresses the language that "incarceration *alone*" is insufficient. As discussed, this [c]ourt does not base its decision on incarceration alone. Again the court is to consider the totality of the circumstances and the particular facts of each case. **Id.** at 572. In **In re R.I.S.**, a seminal case involving the termination of parental rights, the Supreme Court affirmed a trial court's denial of a petition to terminate the father's rights, but it did so in consideration of all the facts of the case. **See In re R.I.S.**, 36 A.3d 567 (Pa. 2011) (the record showed the father was complying with all of the goals of his family service plan and that he had been the primary caretaker of the children before his incarceration). This [c]ourt affirms that it considered the totality of factors in the instant case.

---

[72 Father] requested visits from an early stage in incarceration and maintains regular correspondence with [Child]. **See** N.T. at 20-21.

---

Trial Ct. Op. at 10-12 (most footnotes omitted).

After our careful review of the trial court's application of the law to the facts of this case, we find no reason to disturb the trial court's conclusions. Thus, the trial court's determinations regarding Section 2511(a)(1) are supported by competent, clear and convincing evidence in the record. **See In re Adoption of S.P.**, 47 A.3d at 826-27.

- 13 -

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements:

> (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). The grounds for termination of parental rights under Section 2511(a)(2) for parental incapacity that cannot be remedied are not limited to affirmative misconduct, but may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

Our Supreme Court addressed the relevance of incarceration in termination decisions under Section 2511(a)(2) as follows:

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*In re Adoption of S.P.*, 47 A.3d at 828.

Our Supreme Court set forth our inquiry under Section 2511(a)(2) as follows.

- 14 -

This Court has addressed incapacity sufficient for termination under § 2511(a)(2):

> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.
>
> *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 891 (Pa. 1986) (*quoting* *In re: William L.*, 477 Pa. 322, 383 A.2d 1228, 1239 (Pa. 1978)).

*In re Adoption of S.P.*, 47 A.3d at 827.

After re-visiting its decision in *In re R.I.S.* regarding incarcerated parents, our Supreme Court stated:

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*In re Adoption of S.P.*, 47 A.3d at 830-31 (citations omitted).

- 15 -

Here, the trial court found as follows with regard to Section 2511(a)(2):

> At the time of the hearing, [Father] was incarcerated and therefore unable to provide essential parental care, control, and subsistence. [Father] argues he will be able to provide essential parental care control and subsistence "in the very near future" based in his hope that he will be granted parole in the near future. However, it is uncertain if [Father] will be granted parole, when that will occur, how long it would take for him to actually be released, and what his living situation would be like after his release. [Father] stated he hoped he would be granted parole within approximately three months, and that after his release he would go to a halfway house, and that after arriving at the halfway house he hoped to secure a job that would allow him to rent a two bedroom apartment. This [c]ourt notes [Father] does not have any confirmed job prospects or plans for child care in place, and has no family support in the area.
>
> [Father's] plans, while hopeful, are by no means guaranteed to materialize. This [c]ourt notes [Father] has been incarcerated for all but approximately six months of the preceding thirty; therefore, the record does not show evidence of [Father's] ability to provide even his own basic needs, let alone those of a child. [Father] himself admitted that[,] if he is not granted parole, he will not be released until June, 2017. This [c]ourt does not consider a year's wait "the very near future", and even the timeline optimistically presented by [Father] seems to entail a wait of some weeks or months before [he] is able to secure appropriate housing for [Child], if at all. In addition, [Father] is currently unable to provide medical care for the child, which is particularly important to the child due to [Child's] cleft palate condition and anticipated need of future treatment. [Father] has never been a primary caregiver for the child. Therefore, this [c]ourt finds the record contains competent evidence to find [Father] is unable to provide essential parental care, control, and subsistence at this time, and that [Father] cannot remedy such causes in a timely manner to provide the child with

> permanency. Therefore, this [c]ourt find [sic] the Agency
> proved ground [sic] for termination under § 2511(a)(2).

Trial Ct. Op. at 12-14 (footnotes omitted).

This Court has stated "[P]arents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *In re A.L.D.* 797 A.2d at 340. "[A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *Id.*

After our careful review of the record in this matter, we find that the trial court's credibility and weight determinations are supported by competent evidence in the record. *In re Adoption of S.P.*, 47 A.3d at 826-827. Father's argument regarding Section 2511(a)(2) essentially seeks for this Court to make credibility and weight determinations different from those of the trial court. The trial court properly considered the history of the case, including Father's neglect as a parent to Child and his incarceration, and determined that he would not remedy his failure to parent. Accordingly, we find that the trial court's determinations regarding Section 2511(a)(2) are supported by sufficient, competent evidence in the record.

In sum, we discern no basis to disturb the trial court's determination that there was clear and convincing evidence that termination of Father's parental rights was appropriate under Section 2511(a)(1) and (2).

After we determine that the requirements of Section 2511(a) are satisfied, we proceed to review whether the requirements of subsection (b)

are satisfied. ***See In re Adoption of C.L.G.***, 956 A.2d at 1009. This Court

has stated that the focus in terminating parental rights under Section

2511(a) is on the parent, but it is on the child pursuant to Section 2511(b).

***Id.*** at 1008.

In reviewing the evidence in support of termination under Section

2511(b), our Supreme Court recently stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012). In ***In re E.M.***, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

Instantly, the trial court stated as follows:

> [Father] has alleged the court abused its discretion or committed an error of law in finding that terminating [Father's] rights was in [C]hild's best interest. [Father] has not alleged any facts to support his claim that the [c]ourt abused its discretion, and this [c]ourt is therefore unable to address it with specificity. The record contains no evidence that this court demonstrated manifest unreasonableness, partiality, prejudice or ill-will.
>
> Nor has [Father] alleged any facts to support his claim that this [c]ourt erred as a matter of law on this issue. Having found the Agency proved a statutory ground for termination under 23 Pa.C.S. § 2511(a), this [c]ourt

turned to consider the best interest of the child under 23 Pa.C.S. § 2511(b). ***In re B.L.W.***, 843 A.3d 380, 384 (Pa. Super. 2004) (*en banc*). The standard requires the court "to give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). Furthermore, "the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing, and medical care if found to be beyond the control of the parent." ***Id.*** However, the courts have stated that the emotional needs and welfare of the child have properly been interpreted to include "intangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012). When making a Section 2511(b) determination, the courts are to focus on the child, not on the parent. ***In Re Adoption of C.L.G.***, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

As discussed above, [Father's] history of providing parental care for [Child] is very limited, as is the bond shared by [Father] and [Child]. [Father's] ability to provide even basic housing for [Child], at any time in the near future is uncertain. Thus, at the same time as [Father's] ability to provide a secure and appropriate physical environment [for Child] is uncertain, [Father's] parenting abilities are almost entirely unproven.

[Father] has never been the primary caretaker for [Child], nor have they ever shared a residence. [Father] had zero contact with [Child] for almost a year and a half, and his current interactions are limited to twice-monthly visits of no more than two hours, during which [Father] is never alone with the child and is not allowed to conduct such basic functions as changing [C]hild's diaper. The limited evidence in the record supporting [Father's] parenting abilities encompasses a certificate of completion for a parenting class; testimony that he sends regularly and age-appropriate correspondence; and testimony that the half-dozen visits have gone about as well [as] could be expected of a two-year-old in an unfamiliar and busy environment. [Father] has clearly demonstrated his desire to parent, but his abilities remain almost entirely untested.

As Ms. Sigrist noted repeatedly, while [Father's] recent abilities to provide for and bond with [C]hild have been limited, those limitations are due to incarceration as a consequence of [his] personal choices. As such, this court agrees with the Agency's assessment that it was not "beyond the control" of [Father] to provide parental care and control where [Father] could have avoided further incarceration.

In contrast, [Child] is provided with plentiful love, comfort, security, and stability in the care of [E.B.]. In her care, he enjoys a stable home, surrounded by his half-sister, cousin, and maternal grandmother. He is loved by [E.B.]. He has a strong bond with [E.B.], who has been his primary caretaker for over a year. [E.B.] has stable employment and housing[,] and is monitoring [Child]'s medical needs.[82] Importantly, [Child] has now lived with [E.B.] for more than half his life. She is an experienced caretaker. While [Father] certainly has demonstrated love for [Child] and a desire to remain an important figure in [Child]'s life, [E.B.] has engaged in daily, loving care of [Child] for more than a year. The conditions of [Child]'s future life with [Father] would be highly uncertain, while his life with [E.B.] is confirmedly stable and secure. The record shows termination of [Father's] parental rights will allow for [Child]'s adoption by a relative with whom he is strongly bonded, who is already providing him with a loving and stable home, and in whose household he is surrounded by extended family. Therefore, this [c]ourt finds the record contains competent evidence to find the termination is in [Child]'s best interest under Pa.C.S. § 2511(b).

---

[82] [E.B.] is employed by Highmark Blue Shield. [N.T., 6/15/16], at 44.

---

Trial Ct. Op. at 14-16 (most footnotes omitted).

While Father may profess to love Child, a parent's own feelings of love

and affection for a child, alone, do not preclude termination of parental

rights. *In re Z.P.*, 994 A.2d at 1121. A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125 (citation omitted). Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d at 856. As there is competent evidence in the record that supports the trial court's credibility and weight assessments regarding Child's needs and welfare and the absence of any bond with Father, we conclude that the trial court did not abuse its discretion in finding that Father's appeal lacks merit as to Section 2511(b). *See In re Adoption of S.P.*, 47 A.3d at 826-27.

Lastly, Father argues that the trial court erred in changing the permanency goal to adoption. Father's Brief at 11-12. Section 6351 controls the question of change in permanency goal. *See* 42 Pa.C.S. § 6351. The Pennsylvania Supreme Court recently set forth our standard of review in a dependency case as follows.

> "The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *In re R.J.T.*, [] 9 A.3d 1179, 1190 (Pa. 2010). We review for abuse of discretion[.]

*In Interest of L.Z.*, 360, 111 A.3d 1164, 1174 (Pa. 2015).

- 21 -

When considering a petition for goal change for a dependent child, the trial court considers:

> the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007) (citing 42 Pa.C.S. § 6351(f)).

Regarding the disposition of a dependent child, Section 6351(e), (f), (f.1), and (g) of the Juvenile Act provides the trial court with numerous criteria for its permanency plan for the subject child. Pursuant to those subsections, the trial court is ultimately charged with determining the "disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child." 42 Pa.C.S. § 6351(g).

For the reasons expressed by the trial court regarding Child's best interests quoted above, there was also sufficient, competent evidence in the record to support the finding that a goal change to adoption, so that E.B. may adopt Child, serves Child's best interests.

Accordingly, we affirm the termination decree and the goal change order.

Decree and order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/12/2017